**FLAMINGO FISHING CORP.,
et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 94–82T.

United States Court of Federal Claims.

Aug. 11, 1994.

Daniel D. Levenson, Boston, MA, for plaintiffs. Edward F. Fay, Lourie & Cutler, P.C., of counsel.

David R. House, Washington, DC, with whom was Asst. Atty. Gen. Loretta C. Argrett, for defendant.

## *ORDER*

NETTESHEIM, Judge.

Defendant has moved for a protective order foreclosing plaintiffs in this action from deposing two Internal Revenue Service agents. Plaintiffs have opposed, and argument is deemed unnecessary.

## FACTS

Flamingo Fishing Corp. ("Flamingo"), Nordic Fisheries, Inc. ("Nordic"), Pitriz Fishing Co, Inc. ("Pitriz"), and L & H Fishing Corp. ("L & H") ("plaintiffs"), are owners and operators of commercial fishing vessels out of New Bedford, Massachusetts. During the periods at issue, certain quarters during 1985, 1986, and 1987, plaintiffs Flamingo and Nordic operated "scallopers," fishing vessels that use steel rakes to dredge the ocean floor and harvest scallops. In the February 14, 1994 complaint, plaintiffs requested the refund of employment tax payments made by them for specific quarters in 1987. Plaintiffs assert that they are exempted from making employment tax payments pursuant to section 3121(b)(20) of the Internal Revenue Code, 26 U.S.C. § 3121(b)(20) (1988) (the "I.R.C.").

In 1976 Congress passed I.R.C. § 3121(b)(20), which provides, in pertinent part, that the term "employment" does not include

service ... performed by an individual on a boat engaged in catching fish or other forms of aquatic animal life under an arrangement with the owner or operator of such boat pursuant to which—

(A) such individual does not receive any cash remuneration (other than as provided in subparagraph (B)),

(B) such individual receives a share of the boat's (or the boats' in the case of a fishing operation involving more than one boat) catch of fish or other forms of aquatic animal life or a share of the proceeds from the sale of such catch, and

(C) the amount of such individual's share depends on the amount of the boat's (or the boats' in the case of a fishing operation involving more than one boat) catch of fish or other forms of aquatic animal life,

but only if the operating crew of such boat (or each boat from which the individual receives a share in the case of a fishing operation involving more than one boat) is normally made up of fewer than 10 individuals.

The two issues raised by plaintiffs' complaint with respect to Flamingo and Nordic are whether their vessels "normally" sailed with fewer than 10 men and whether certain cash payments made to the cook, mate, and engineer of each vessel are cash remuneration outside the scope of the statute. As to the first issue, plaintiffs contend that the Internal Revenue Service (the "IRS") has not clearly defined "normally" and that the word should refer to the average number of crewmen in a calendar year. Plaintiff Nordic further maintains that the IRS did not provide adequate notice of its interpretation of the word "normally" for Nordic to know

whether it had a duty to withhold FICA and FUTA taxes. Defendant responds that the IRS had defined "normally" prior to the periods at issue, that plaintiffs had at least constructive notice, and that the definition of "normally fewer than 10 men" is determined by looking at the number of men on a majority of trips during each calendar quarter. Although the matter is set for trial, both parties moved for summary judgment on this issue.

As to the second issue, plaintiffs contend that the cash payments—each known as a "per"—to the cook, mate, and engineer were made in accordance with the terms of a union agreement. The agreement required that each per be allocated on the basis of a sliding scale that determined the amount of the per as a percentage of the proceeds of the sale of the catch. Plaintiffs contend that all pers therefore come under the requirements of the statute and, consequently, they are exempt from employment tax payments. Plaintiffs have moved for summary judgment on this issue; defendant takes the position that a genuine issue of material fact is present with respect to the per dispute.

On June 22, 1994, plaintiffs noticed the depositions of the IRS agents who audited Flamingo and Nordic. On June 28, 1994, defendant moved for a protective order to prohibit the taking of the depositions and for an extension of time to review whether an exercise of executive privilege would be warranted. On July 14, 1994, defendant filed a supplemental memorandum regarding executive privilege. On July 28, 1994, plaintiffs filed their opposition to defendant's motion. On August 4, 1994, defendant replied, taking no position with respect to executive privilege.

Plaintiffs contend that discovery from the agents is necessary on both issues to provide additional direct evidence that the IRS had not clearly defined the term "normally" and that the pers were paid on a sliding scale. Plaintiffs' notice of deposition requests that the IRS agents testify as to the training, supervision, and guidance that they received relating to their examinations, the provisions of the I.R.C. "relevant to the examinations," and the agents' interpretations of those pro-

visions. In their July 28, 1994 memorandum, plaintiffs listed questions on each issue. Eleven questions relate to the "normally" issue. Questions 1–2 deal with the agents' understanding of the word "normally" in the statute. Questions 3–4 concern the agents understanding of G.C.M. 39,148 (Mar. 1, 1984), and whether they followed it in conducting their audit of plaintiffs. Questions 5–6 concern directions or instructions about the audit received by the agents. Question 7 inquires whether the agents audited plaintiffs early in the taxpayers' involvement in the project audit. Questions 8–9 address whether or not the agents asked the boat owners and the people who wrote the settlement sheets how they interpreted the word "normally" in the statute. Question 10 relates to whether the agents asked the boat owners about their expectations regarding crew size on trips taken during the periods at issue. Question 11 asks whether the agents had ever audited a corporation that owned a scalloper prior to their audit of plaintiffs.

Plaintiffs listed 18 questions on the per issue. Questions 1–6 and 11–13 inquire about the agents' audit of fishing boat corporations prior to the audit of plaintiffs in 1988. Question 7 asks whether the agents ever, prior to the 1988 audit, discussed with a boat owner whether crew members should be considered employees or self-employed. Questions 8–9 relate to whether the agents had audit checklists prepared for them before commencing the audit of a fishing boat corporation, and if so, the substance of those checklists. Question 10 asks if, prior to the audit at issue, the agents knew what a per was. Question 14 inquires whether the agents knew of Revenue Ruling 77–102 prior to the audit of plaintiffs. There is no question 15. Questions 16–17 pertain to the agents' knowledge of the union contract's sliding scale method of determining the amount of each per. Finally, question 18 concerns the agents' approach to per payments for purposes of the audit.

## DISCUSSION

Defendant requests an order prohibiting plaintiffs from deposing the agents. RCFC

26(b)(1) sets forth the boundaries for discovery requests:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Defendant contends that the depositions will not lead to the discovery of admissible evidence—that the topics mentioned in the notice of deposition are wholly irrelevant to the issues of the case.

■ As to the issue concerning the definition of "normally," defendant argues that "the attitude, guidance, or supervision of these two agents is irrelevant to whatever 'notice' the plaintiffs themselves may ... or may not have received." Def's Mot. filed June 28, 1994, at 5. Plaintiffs do not respond that the questions are relevant to the notice issue; rather, they contend that the questions will lead to evidence that the definition of "normally" is ambiguous and was applied inconsistently by the agents. Plaintiffs cite no case law or other authority supporting their position that discovery is allowable on this issue.

"The opinions, conclusions and reasoning of government officials are not subject to discovery." *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir.1974). "The subjective analysis of the agent and technical advisor ... and their respective opinions as to the proper method to be applied in determining whether taxes are due form no part of the plaintiffs' case." *Detroit Screwmatic Co. v. United States*, 49 F.R.D. 77, 78 (S.D.N.Y. 1970). "[T]he opinions, impressions, conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment against plaintiff.... Resolution of these issues depends solely on application of the pertinent law to the facts of this case; ... the opinions of individual IRS agents regarding their propriety are immaterial." *Garity v. United States*, 81–2 T.C. (CCH) ¶ 9599, 1980 WL 1765 (E.D.Mich.1980).

The issue in this case is whether plaintiffs qualify for the exemption of I.R.C. § 3121(b)(20). The agents' opinions regarding the meaning of "normally" and their conclusions regarding G.C.M. 39,148 are irrelevant to this issue. Questions 1–4 directly ask for the opinions and conclusions of the agents; these are irrelevant issues and therefore not discoverable. Questions 5–6, which relate to the role of the agents' supervisors in the audit, invite speculation concerning conclusions, mental impressions, and opinions of the agents' supervisors and thus also are not discoverable. Question 7, regarding when during the course of the project audit the agents audited plaintiffs, is irrelevant to any issue in this case and will not lead to the discovery of any admissible evidence. Questions 8, 9, and 10, which relate to the agents' procedures and questioning during the audit of plaintiffs, do not directly ask for the opinions of the agents, but do invite speculation regarding their mental impressions and conclusions. Again, these are not issues appropriate for discovery.

■ Question 11 on the "normally" issue asks for information regarding the agents' analysis of crew size in prior audit of fishing boat corporations. This request runs athwart I.R.C. § 6103(b)(2)(A) (1988), which prevents the disclosure of tax return information, including audit information.

As to the "per" issue, all of plaintiffs' questions relate to the agents' audit of fishing operations prior to the audit of plaintiffs at issue. These questions also violate I.R.C. § 6103(b)(2)(A).

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

Defendant's motion for protective order is granted. Plaintiffs Flamingo Fishing Corp., Nordic Fisheries, Inc., Pitriz Fishing Co, Inc., and L & H Fishing Corp., may not take the depositions of the Internal Revenue Service agents involved in this case.